**Maria E. GOMEZ CANDELARIA, et al., Plaintiffs**

**v.**

**José A. RIVERA RODRÍGUEZ, et al., Defendants**

**No. CIV. 01–1391(JP).**

United States District Court, D. Puerto Rico.

Feb. 25, 2002.

---

Eliezer Aldarondo–Ortiz, Esq., Pablo Landrau–Pirazzi, Esq., San Juan, for Plaintiff.

Ismael Rodríguez–Izquierdo, Esq., First Federal Savings Bldg., José A. Santiago–Rivera, Esq., Commonwealth Department of Justice, Federal Litigation Division, San Juan, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION AND BACKGROUND

The Court has before it individual capacity co-Defendants José Rivera–Rodríguez and Luz E. Rivera–Oyola's Motion for Summary Judgment (**docket No. 86(A)**) and Plaintiffs' Opposition thereto, (docket No. 92).

Plaintiffs are twenty-four (24) members of the New Progressive Party ("NPP") and employed by the Municipality of Gurabo in jobs funded through the Employment Opportunities Development Fund created by Section 2 of Act 52 of August 9, 1991, 29 P.R. Laws Ann. § 711c, ("Law 52"). Plaintiffs assert that after Popular Democratic Party ("PDP") member José A. Rivera Rodríguez ("Rivera") was elected Mayor of Gurabo for a four-year term starting in January of 2001, he and the Municipality of Gurabo's Human Resources Director Luz E. Rivera Oyola ("Rivera–Oyola"), politically discriminated against them by declining to renew their Law 52 contracts, even though Law 52 funds were approved. They claim that Mayor Rivera's current administration hired people affiliated with the PDP to fill Plaintiffs' former positions and/or perform their former functions. Plaintiffs brought this action under the First Amendment of the United States Constitution and 42 U.S.C. § 1983. In addition, Plaintiffs invoke the Court's supplemental jurisdiction to hear claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 P.R. Laws Ann. §§ 5141 and

5142. Plaintiffs seek declaratory and injunctive relief, back pay, front pay, economic and punitive damages and interests.

In their Motion for Summary Judgment, individual capacity Defendants Mayor Rivera and Human Resource Director Rivera–Oyola claim that 1) they are entitled to qualified immunity; 2) the complaint should be dismissed as to Rivera–Oyola because she was not personally involved in actions connected to the non-renewal of Plaintiffs' employment contracts; and 3) the claims of co-Plaintiffs José L. Cadiz–Picart, Zenaida Pérez–Vega, Angel L. Arroyo–Guzmán, Rafael Nazario–Rodríguez and Shirley M. Morales–Rivera should be dismissed because they did not request renewal of their Law 52 contracts.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea*

*Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1992). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## III. SECTION 1983

Section 1983 provides for injunctive relief and the recovery of damages against individuals and governmental entities that deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.[1] The U.S.

1. 42 U.S.C. § 1983 provides, in relevant part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to any deprivation of any rights, privileges,

Supreme Court has "repeatedly held that the coverage of section 1983 must be broadly construed." *Dennis v. Higgins,* 498 U.S. 439, 443, 111 S.Ct. 865, 868, 112 L.Ed.2d 969 (1991) (quoting *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 105, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989)). A broad construction is consistent with the legislative history of section 1983, which was enacted as a remedial measure. *See id.* (citing *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 684, 98 S.Ct. 2018, 2032, 56 L.Ed.2d 611 (1978)).

In order to establish a prima facie cause of action under section 1983, Plaintiffs must prove that Defendants' conduct deprived them of a constitutional right. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330–331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

## IV. UNCONTESTED FACTS

Based on the record and the parties' contentions contained in the Initial Scheduling Conference Order (docket No. 22); Defendants' Motion for Summary Judgment (docket No. 86(a)); Plaintiffs' Opposition thereto (docket No. 31); and stipulated facts contained in the joint proposed pretrial order, (docket No. 100), and after the parties have completed discovery in the instant case, the Court finds the following facts to be undisputed:

1. Plaintiffs in this action are all citizens of the United States of America, who were employed until January 31, 2001 by the Municipality of Gurabo in jobs funded through the Employment Opportunities Development Fund created by Section 2 of Act 52 of August 9, 1991, 29 P.R. Laws Ann. § 711(c).

2. By virtue of Act 52 of August 9, 1991, the Puerto Rico Legislature, among other things, created an Employment Opportunities Development Fund, separate and distinct from all other moneys or funds of the Commonwealth of Puerto Rico. These funds are continually at the disposition of the Secretary of the Treasury, solely and exclusively for activities coordinated by the Employment Service of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico, directed to: (1) promote employment opportunities with future possibilities as thus identified officially by the Department of Labor and Human Resources; (2) promote jobs that are in demand in the present market; and (3) promote the creation of high productivity employment opportunities (hereinafter "Law 52" or "Law 52 Funds").

3. For years since its enactment, the Municipality of Gurabo, as well as other municipalities across the Commonwealth, has applied for and been granted moneys from the Law 52 fund to subsidize a number of municipal jobs.

4. All Plaintiffs worked at the Municipality of Gurabo pursuant to a Law 52 employment contract running from July 1 through December 31, 2000, which was later extended until January 31, 2001.

5. Plaintiffs' Law 52 contracts are transitory in nature and usually extend only for one natural year.

6. On November 7, 2000, general elections were held in Puerto Rico.

or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7. In the Municipality of Gurabo, the then incumbent Mayor, Víctor Rivera Acevedo, Esq., affiliated with the New Progressive Party ("N.P.P."), was defeated by the Popular Democratic Party's ("P.D.P.") candidate, the defendant José A. Rivera Rodríguez. Accordingly, in January 2001, defendant Rivera Rodríguez was sworn as Mayor of the Municipality of Gurabo.

8. At the time that Defendant José A. Rivera Rodríguez took office on January 9, 2001, all of the plaintiffs had worked at the Municipality of Gurabo, for different lengths of time, in jobs subsidized Law 52 funds.

9. By letter dated January 30, 2001, defendant Mayor José A. Rivera Rodríguez terminated Plaintiffs' respective employments with the Municipality of Gurabo, effective on January 31, 2001.

10. Contemporaneously with their dismissal from their municipal employments, all Plaintiffs with the exception of José L. Cadiz–Picart, Zenaida Pérez–Vega, Angel L. Arroyo–Guzmán, Rafael Nazario–Rodríguez and Shirley M. Morales–Rivera, let the Mayor know, personally or through his underlings, that they were willing and able to renew their former duties as soon as the new proposal for Law 52 Funds, already in the pipeline, were approved.

11. Shortly after Plaintiffs' employment was terminated, the Law 52 Funds proposal was approved.

12. The Municipality did not rehire Plaintiffs under the new Law 52 proposal corresponding to the period commencing in mid-February of the year 2001.

13. None of the plaintiffs were reinstated to their previous positions with the Municipality of Gurabo.

14. At the time that Plaintiffs were replaced with other persons in their former Law 52 positions, Plaintiffs' past work performance was not taken into account.

15. The Commonwealth's Department of Human Resources through its Promotion of Jobs Bureau, is the entity in charge of receiving and approving proposals for the funding of job positions under Law No. 52, and administering funds under said law.

16. The jobs created under Law No. 52 depend and are conditioned upon the approval and funding of a proposal submitted by the Municipality to Promotion of Jobs Bureau of the Commonwealth's Human Resources Department.

17. Defendant José A. Rivera–Rodríguez is the current Mayor of the Municipality of Gurabo.

18. Defendant Luz E. Rivera–Oyola is the current Director of the Municipality of Gurabo's Human Resources Office. She has worked at the Municipality of Gurabo in various capacities since 1991, and was appointed Human Resources Director on January 9, 2001.

19. While executing or implementing the Mayor's order to not renew Plaintiffs' contracts, Defendant Rivera–Oyola was strictly following orders, she had no participation in the actual official decision and determination not to renew Plaintiffs' contracts.

20. Luz E. Rivera–Oyola is a member of the PDP.

21. All Plaintiffs were appointed employees of the Municipality of Gur-

abo at some point during the NPP administration of the Municipality of Gurabo which encompassed a period from January 1993 through January 8, 2001. During that time, Defendant Luz M. Rivera Oyola performed pay-roll tasks.

22. Defendant Luz E. Rivera Oyola drafted the Law 52 employees' termination letters.

23. Defendants Luz E. Rivera Oyola and Mayor José A. Rivera Rodríguez discussed Plaintiffs' employment together.

24. During the political campaign of the 2000 elections, defendant Mayor José A. Rivera Rodríguez visited various homes in Gurabo.

25. The P.D.P. in Gurabo conducted a political canvassing ("punteo electoral") on the electoral lists provided by the State Election Board, attempting, among other things, to identify the political affiliation of its electors.

26. This political canvassing, which in Defendant José A. Rodríguez's opinion is of utmost importance, is carried out primarily by ward leaders assisted by other political soldiers.

27. Once Plaintiffs' termination letters were prepared, Defendant Luz E. Rivera Oyola took the letters to Defendant Mayor José A. Rivera Rodríguez's office for him to sign them.

28. In the first Law 52 proposal submitted by Defendant José A. Rivera Rodríguez, there were three newly created secretarial positions whose salary was higher than the standard salary for all positions in the previous proposal. Ms. Lithbeth Figueroa, Ms. Zuldelis Barbosa and Ms. Wanda Maldonado, three members of Defendant Mayor José A. Rivera Rodríguez's advance during the foregoing political campaign, were appointed to occupy such positions.

29. There were likewise three newly created positions of Community Assistants, also with salaries higher than the previous proposal's standard salary level. These positions were given to one Rafaela Agosto, the Municipal Assembly's President's sister, Jandys Negrón and Javier Ortiz Morales, the latter two also members of Defendant José A. Rivera Rodríguez's advance during the preceding political campaign.

30. The Human Resources Director, Defendant Luz E. Rivera Oyola, was the person that dealt with the preparation of the Law 52 proposals after Plaintiff José A. Rivera Rodríguez took the reins of the Municipality of Gurabo.

31. Defendant Luz E. Rivera Oyola knows that Plaintiffs were appointed during the past N.P.P. administrations at the Municipality of Gurabo.

32. Defendant Luz E. Rivera Oyola did not consider whether Plaintiffs' work performance at the Municipality of Gurabo was satisfactory.

33. It was not uncommon for an irregular or transitory employee at the Municipality of Gurabo to work subsequently pursuant to a Law 52 employment contract.

34. The person who put together the Law 52 proposals prior to Defendant Luz E. Rivera–Oyola was one Julia Burgos from whom Defendant did not seek advice on the particulars of Law 52.

35. Defendant Luz E. Rivera–Oyola knows that Julia Burgos is a member of the NPP.

36. Six Plaintiffs who held Office Clerk positions pursuant to Law 52 employment contracts had the minimum requirements for Secretary positions under the Law 52 grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of the Municipality of Gurabo.

37. Plaintiffs Maria E. Gomez, Raquel Barbosa, Olga Marín, Edna Rivera, and Grisel Carderín, who worked at the Municipality of Gurabo pursuant to Law 52 employment contracts, met the requirements for Workers and for Homemakers under the Law 52 Grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of Gurabo.

38. Plaintiffs Carlos J. Hidalgo, Rafael Coss, Abraham Carrasquillo and José L. Cadiz, who worked as Drivers at the Municipality of Gurabo pursuant to Law 52 employment contracts, met the requirements for Drivers under the Law 52 grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of Gurabo.

39. Plaintiff Angel Arroyo, who worked as Janitor at the Municipality of Gurabo pursuant to a Law 52 employment contract met the requirements for Janitor under the Law 52 grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of Gurabo.

40. Plaintiff Santos E. Román and Luis E. Ortiz, who worked as Workers at the Municipality of Gurabo pursuant to Law 52 employment contracts met the requirements for Workers under the Law 52 grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of Gurabo.

41. Plaintiff Maria V. Amadeo and Inés Hernández, who worked as Homemakers at the Municipality of Gurabo pursuant to Law 52 employment contracts, met the requirements for Homemakers under the Law 52 grant awarded to the Municipality after the inauguration of Defendant José A. Rivera Rodríguez as Mayor of Gurabo.

42. Defendant Luz E. Rivera–Oyola believes that the Municipality of Gurabo's economy is in a recession.

43. A comparative table of the Law 52 grants awarded to the Municipality of Gurabo for the periods of July 1 through December 31, 2000; February 16 through June 30, 2001; and July 1, 2001 through June 30, 2002 looks as follows:

| LAW 52 GRANT JULY 1—DECEMBER 31, 2000 | | | LAW 52 GRANT FEBRUARY 16—JUNE 30, 2001 | | | LAW 52 GRANT JULY 1, 2001—JUNE 30, 2002 | | |
|---|---|---|---|---|---|---|---|---|
| POSITION | NUMBER | SALARY | POSITION | NUMBER | SALARY | POSITION | NUMBER | SALARY |
| HOMEMAKER | 11 | $836.88 | HOMEMAKER | 11 | $ 836.88 | HOMEMAKER | 11 | $ 836.88 |
| JANITOR | 3 | $836.88 | JANITOR | 3 | $ 836.88 | JANITOR | 3 | $ 836.88 |
| WORKER | 14 | $836.88 | WORKER | 17 | $ 836.88 | WORKER | 12 | $ 836.88 |
| SECURITY | 2 | $836.88 | RECREATIONAL LEADER | 2 | $ 927.00 | RECREATIONAL LEADER | 2 | $ 927.00 |
| OFFICE CLERK | 9 | $836.88 | SECRETARY | 3 | $ 960.00 | SECRETARY | 3 | $ 960.00 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DRIVER | 5 | $836.88 | DRIVER | 2 | $ 836.88 | DRIVER | 2 | $ 836.88 |
| PLACEMENT OFFICER | 1 | $836.88 | BRIGADE SUPERVISOR | 2 | $ 995.00 | BRIGADE SUPERVISOR | 1 | $ 995.00 |
| | | | COMMUNITY AFFAIRS ASSISTANT | 3 | $1,023.00 | COMMUNITY AFFAIRS ASSISTANT | 3 | $1,023.00 |
| TOTAL | 45 | | | 43 | | | 37 | |

44. Six plaintiffs who held Office Clerk positions pursuant to Law 52 employment contracts had the minimum requirements for Community Affairs Assistant positions under the Law 52 grant awarded to the Municipality after the inception of defendant José A. Rivera Rodriguez as Mayor of Gurabo.

45. Plaintiff Jackeline Delgado Burgos, who held a position as Placement Officer pursuant to a Law 52 employment contract had the minimum requirements for the Recreational Leader and Brigade Supervisor positions under the Law 52 grant awarded to the Municipality after the inception of defendant José A. Rivera Rodriguez as Mayor of Gurabo.

46. The names of the persons who worked for the Municipality of Gurabo under contracts subsidized by Law 52 funds for the period of February 16, 2001 through June 30, 2001 are as followings:

*Workers:*
a. Félix N. Flores González
b. Efraín Colón Cortés
c. Justino Vázquez Díaz
d. Julio Ramírez Guadalupe
e. Bienvenido Cruz Muñoz
f. Antonio Flores Lluveras
g. Víctor Calo Alfono
h. Erick A. Rivera Carrasquillo
i. José Carrión Carrión
j. Carmelo Cortés Cortés
k. Israel Suárez Ramos
l. Juan Concepción
m. Víctor M. Castro Ortiz
n. Pablo García López
o. Héctor C. Agosto Martínez
p. Wilfredo Alamo
q. Juan C. Rojas Colón.

*Homemakers:*
a. Luz S. Vargas Cáceres
b. Margarita Rosa Rodríguez
c. Sol A. Carrillo de León
d. Luz N. Roldán Rodríguez
e. Wilda Vélez Correa
f. Nidia Vélez Correa
g. Ana Rosa Rivera Alejandro
h. Berlitz Cruz Hernández
i. Antonio Villados Gómez
j. Dolores Hernández Infante
k. Carmen Negrón García

*Janitors:*
a. Maribel Rodríguez Morales
b. Judith Reyes Santa
c. María E. Cruz Cotto

*Recreational Leaders:*
1. Isidoro Pabellón López
2. Antonio Rivera Marrero

*Brigade Supervisors:*
1. José Gómez Acosta
2. Edwin Vélez Correa

*Drivers:*
 a. Ángel L. Torres Agosto
 b. Norberto O. Sánchez Ortíz

*Secretaries:*
 a. Wanda Maldonado Figueroa
 b. Lizbeth Figueroa de Jesús
 c. Zuldeliz Barbosa Arroyo

*Community Affairs Assistants:*
 a. Javier Ortiz Morales
 b. Jandys Negrón Soto
 c. Rafaela Agosto Vélez

47. The names of the persons who worked for the Municipality of Gurabo under contracts subsidized by Law 52 funds for the period from July 1, 2001 through December 31, 2001 and their respective positions are as follows:

*Workers:*
 a. Efraín Colón Cortés
 b. Julio Ramírez Guadalupe
 c. Víotor M. Castro Ortiz
 d. José Carrión Carrión
 e. Juan Concepción
 f. Félix N. Flores González
 g. Justino Vázquez Díaz
 h. Carmelo Cortés Cortés
 i. Israel Suárez Ramos
 j. Juan E. Rojas Colón
 k. Víctor Calo Alfonso
 l. Héctor Agosto

*Homemakers:*
 a. Margarita Rosa Rodríguez
 b. Berlitz Cruz
 c. Dolores Hernández
 d. Wilda Vélez
 e. Antonia Villados
 f. Sol A. Carrillo
 g. Ana R. Rivera
 h. Luz N. Roldán

 i. Nidia Vélez
 j. Carmen Negrón
 k. Luz S. Vargas

*Janitors:*
 a. Maribel Rodríguez Morales
 b. Judith Reyes Santa
 c. María E. Cruz Cotto

*Recreational Leaders:*
 1. Isidoro Pabellón López
 2. Antonio Rivera Marrero

*Brigade Supervisor:*
 Edwin Vélez Correa

*Drivers:*
 a. Ángel L. Torres Agosto
 b. Norberto O. Sánchez Ortíz

*Secretaries:*
 a. Wanda Maldonado Figueroa
 b. Lizbeth Figueroa De Jesús
 c. Zuldeliz Barbosa Arroyo

*Community Affairs Assistants:*
 a. Javier Ortiz Morales
 b. Jandys Negrón Soto
 c. Rafaela Agosto Vélez

48. The names of the persons who are working for the Municipality of Gurabo under contracts subsidized by Law 52 funds for the period from January 1, 2002 through June 30, 2002 and their respective positions are as follows:

*Workers:*
 a. Justino Vázquez Díaz
 b. Israel Suarez Ramos
 c. Juan C. Colón Rojas
 d. Julio Ramírez Guadalupe

e. Félix N. Flores González

f. Carmelo Cortés Cortés

g. Juan B. Concepción González

h. Efraín Colón Cortés

i. Víctor M. Castro Ortiz

j. José R. Carrión Carrión

k. Víctor M. Calo Alifonso

*Homemakers:*

a. Antonia Villodas Gómez

b. Wilda Vélez Correa

c. Nydia I. Vélez Correa

d. Margarita Rosa Rodríguez

e. Luz N. Roldán Rodríguez

f. Ana R. Rivera Alejandro

g. Dolores Hernández Infante

h. Sol A. Carrillo de León

i. María M. Gómez Miranda

j. Carmen Vázquez

*Janitors:*

a. Maribel Rodríguez Morales

b. Judith Reyes Santa

c. María E. Cruz Cotto

*Recreational Leaders:*

a. Antonio Rivera Marcano

b. Isidoro Pabellón López

*Brigade Supervisor:*

Edwin Vélez Correa

*Drivers:*

a. Ángel L. Torres Agosto

b. Norberto O. Sánchez Ortíz

*Secretaries:*

a. Wanda Maldonado Figueroa

b. Lizbeth Figueroa De Jesús

c. Zuldeliz Barbosa Arroyo

*Community Affairs Assistants:*

a. Javier Ortiz Morales

b. Jandys Negrón Soto

c. Rafaela Agosto Vélez

# V. ANALYSIS

## A. *Defendants' Allegation of Lack of Personal Involvement on the Part of co-Defendant Luz E. Rivera Oyola*

■ Defendants allege that the claims against co-Defendant Rivera–Oyola must be dismissed because she had no personal involvement in the alleged deprivation of Plaintiffs' rights. Their contention likely stems from uncontested fact number 19, which states that co-Defendant Oyola strictly followed orders to not renew Plaintiffs' contracts and did not participate in the actual official decision not to renew Plaintiffs' contracts.

Nonetheless, the record reflects otherwise. Co–Defendant Rivera Oyola is the Human Resources Director for the Municipality of Gurabo, and as such was a confidential or trust employee, who "intervene[s] or collaborate[s] substantially in the formulation of public policy." 3 P.R. Laws Ann. § 1350 (Supp.1998). Her position reflects that she has more influence with decision-making matters than that of a general employee who merely follow orders. She was responsible for "advising directly or rendering direct services to the [Mayor]." *Id.* In this way, it is highly likely that she was expected to advise the Mayor on matters related to Municipal of Gurabo employment, which was her area of specialty. Furthermore, uncontested fact numbers 21 and 22 state that Mayor Rivera discussed Plaintiffs' employment with her and that she prepared and drafted Plaintiffs' termination letters. Clearly, there is a genuine issue of material fact, which a jury must determine, as to what influence co-Defendant Rivera–Oyola exercised over the Mayor's decision not to renew Plaintiffs' Law 52 contracts. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

Due to this conflict, Defendants' motion for summary judgment dismissing the claims against co-Defendant Rivera–Oyola is hereby **DENIED.**

### B. *Qualified Immunity*

The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 65 (1st Cir. 1997). The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García v. Vera–Monroig,* 204 F.3d 1, 10 (1st Cir.2000) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

 Defendants contend that even if it is found that they violated Plaintiffs' rights by not renewing their Law 52 contracts, they are entitled to qualified immunity because they did not believe that they were violating Plaintiffs' rights by not renewing their contracts. They further claim that their actions were objectively reasonable because the decision not to renew Plaintiffs' employment was made after consulting with the Department of Labor officials who administered the Law 52 programs. Plaintiffs, on the other hand, contend that Defendants did not renew Plaintiffs contracts because of political discrimination in contravention of the clearly established law prohibiting patronage dismissals. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct.

1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Accordingly, they argue that Defendants are not immune from liability since their unconstitutional actions occurred when the law regarding patronage dismissals was "clearly established".

When assessing a claim of qualified immunity, the Court should first consider whether the allegations of the complaint make out a constitutional rights claim. *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999). If the answer to this inquiry is in the affirmative, the Court must then determine as a matter of law, whether the constitutional right in question was clearly established at the time of the alleged violation. *St. Hilaire v. Laconia,* 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). The Supreme Court has recently noted however that "[t]his inquiry, ... must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If this inquiry yields an answer that is also in the affirmative, the final inquiry is whether a similarly situated official reasonably "should have understood that [his or her] conduct violated" that right. *St. Hilaire,* 71 F.3d 20 at 24. If the answer is in the affirmative, qualified immunity is appropriate. However a negative answer requires the denial of the defense.

In the case at bar, Plaintiffs have alleged facts that, if true, make out a constitutional rights claim of political discrimination. However, while the general prohibition against political discrimination is clearly established when Defendants acted, the factual circumstances and motivations surrounding the Defendants' decision not to renew Plaintiffs' Law 52 contracts are in dispute. *See Roldán–*

*Plumey* 115 F.3d at 65–66. Due to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding the Mayor's decision not to renew Plaintiffs' contracts, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendants' motion for qualified immunity at this time. *Kelley v. LaForce*, No. CIV. 00–2543, 2002 WL 181337, at *3 (1st. Cir. Feb.8, 2002); *Acevedo-García v. Vera Monroig*, 30 F.Supp.2d 141 (D. Puerto Rico 1998) (Pieras, J.) aff'd 204 F.3d 1 (1st Cir.2000).

■ Moreover, Defendants' emphasis on the argument that their conduct was "objectively reasonable" because they acted after consulting Department of Labor officials is not sufficient to convey qualified immunity on them. As this Circuit has stated, "[a] determination of objective reasonableness 'will often require examination of the information possessed' by the defendant officials". *Kelley v. LaForce*, No. CIV. 00–2543, 2002 WL 181337, at *3 (1st. Cir. Feb.8, 2002), citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). However, when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella". *Id.*

Even if this Court was to "objectively" consider the fact that Defendants sought the advice of the Department of Labor prior to not renewing Plaintiffs' contracts, Plaintiffs have proffered evidence which indicates that Defendants did not renew their contracts because of discriminatory animus. This evidence weighs heavily on the Court's assessment of qualified immu-

nity. Likewise, as it relates to motive, it must be evaluated by a trier of fact. Accordingly, Defendants' motion for qualified immunity is hereby **DENIED.**

## C. *Plaintiffs Who Did Not Request Renewal of Their Law 52 Contracts*

■ Defendants argue that since it is an uncontested fact that Plaintiffs José L. Cadiz–Picart, Zenaida Pérez–Vega, Angel L. Arroyo–Guzmán, Rafael Nazario–Rodríguez and Shirley M. Morales–Rivera did not request renewal of their contracts, they do not have a right to claim constitutional rights violations. The Court disagrees with this reasoning. This case is about political discrimination. The question about whether Defendants were motivated by political animus when they decided not to renew Plaintiffs' Law 52 contracts is an issue of fact that must be decided by a jury. The fact that co-Plaintiffs José L. Cadiz–Picart, Zenaida Pérez–Vega, Angel L. Arroyo–Guzmán, Rafael Nazario–Rodríguez and Shirley M. Morales–Rivera did not request renewal of their contracts, does not relieve Defendants of their legal obligation not to deny them continued employment for political reasons. Therefore, Defendants' motion for summary judgment as to the claims brought by José L. Cadiz–Picart, Zenaida Pérez–Vega, Angel L. Arroyo–Guzmán, Rafael Nazario–Rodríguez and Shirley M. Morales–Rivera is hereby **DENIED.**

## VI. LAW 52

■ There is no case law in this Circuit which interprets Law 52. Therefore, the Court has looked to the plain language of the law itself to shed light on the issue of whether Defendants were permitted to not renew Plaintiffs' Law 52 contracts when

new Law 52 funds were approved for use by the Municipality of Gurabo.

Law 52 reads in pertinent part:

### § 711(c) Employment Opportunities Development Fund

**(a) Establishment of the Fund**—An Employment Opportunities Development Fund is hereby created in the Treasury of the Commonwealth of Puerto Rico, as a special fund, separate and distinct from all other moneys or funds of the Commonwealth of Puerto Rico. This fund shall consist of:

(1) All money arising from the portion of the special tax collected by virtue of section 708(h)(1) of this title;

(2) any interest accrued on any money of the Fund;

(3) any property or securities acquired in lieu of interest, fines, penalties or other obligations to the Fund; and

(4) moneys received for the Fund from any other source.

**(b) Deposit and disbursement**—...
The money in the Fund shall be continually at the disposal of the Secretary, solely and exclusively for activities coordinated by the Employment Service of the Department of Labor and Human Resources directed to:

(1) Promote employment opportunities in occupations with future possibilities as officially identified by the Department of labor and Human resources;

(2) Promote jobs that are in demand in the present market;

(3) Promote the creation of high productivity employment opportunities;

(4) Promote employment and training opportunities for the elderly.

**(c) Use of the Fund**—In view of the nature and origin of the funds, their uses and distribution shall be consistent with the procedural directives of the Federal Unemployment Tax Act. The moneys of the Fund shall be used for the creation of an employment and training opportunities program in the public and private sectors as provided by the Secretary through regulations. The program established shall include persons of advanced age, as said term is defined in §§ 1951 et seq. of Title 3 and shall provide for their training and retraining. Said moneys may also be used to maintain existing jobs, extend their duration, modify compensation as a transitory remedial measure in situations that may involve possible job loss, when it is deemed justifiable in the Secretary's judgment.

29 P.R. Laws Ann. § 711c (Supp.1998).

After reviewing the Law 52 briefs submitted by the parties and the law itself, the Court believes that Defendants were required to offer Plaintiffs continued employment in their jobs with the Municipality of Gurabo once Law 52 funds were approved for use by the Municipality of Gurabo.

The Court finds that, although the positions created by Law 52 fund proposals are transitory in nature, a property interest can still be derived from those positions. The First Circuit has held that, "transitory employees **generally** do not have a property interest in continued employment beyond their yearly terms of appointment." *Nieves–Villanueva v. Soto-Rivera*, 133 F.3d 92, 94 (1st Cir.1997) (emphasis added). The Court understands that a property interest is not **generally** granted to transitory employee positions because these positions are created to fill an employer need or to perform specific tasks of a finite duration. Once completed, the employer for whose benefit the transitory employee was hired, may opt not to renew his contract. However, Law 52 positions' transitory natures are predi-

cated upon the approval of Law 52 proposals and the subsequent availability of funds and are not based merely upon employer need.

The Court substantiates its theory by looking to the intent of Law 52. Law 52 positions are created to reduce the number of unemployed individuals in the Commonwealth of Puerto Rico. *Statement of Motives*, Law No. 52, August 9, 1991, P.R. Laws at 213. Law 52's aim and motive is to employ people, and its primary beneficiaries are the unemployed. This is evidenced by the fact that only unemployed individuals are eligible to receive Law 52 contracts. *See* 26 P.R. Laws Ann. § 711(c)(c) ("In order to benefit from this Fund, the participant shall have to be registered in an employment Service Office in Puerto Rico.").

Since the goal of Law 52 is employment, once new Law 52 funds are approved, it would be counterproductive not to require that employers extend the duration of Law 52 contracts. Refusing to renew these contracts has the effect of returning once gainfully employed people to Puerto Rico unemployment lines, from which they were originally hired. Refusing to keep Law 52 employees employed when there are available funds or replacing a Law 52 employee, for a reason other than just cause, would in and of itself violate the very spirit of the law. *See United Steelworkers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) (Justice Brennan discussing importance of reading acts within the historical context in which they arise); *Holy Trinity Church v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226(1892).

Therefore, the Court **HOLDS** that when there are funds available for renewal of Law 52 positions, transitory employees who have been continuously re-employed with previous Law 52 grants and who have been for all practical purposes refused re-employment, have at that point a property interest in their continued employment and therefore must be allowed and are entitled to a pre-termination hearing. Under these circumstances, if the contract of a Law 52 transitory employee is not renewed and another person who is affiliated with a rival political party is employed in his stead, the Law 52 transitory employee (Plaintiffs in this case) have a cause of action under the law not only for political discrimination but also for due process.

## VI. CONCLUSION

In view of the foregoing discussion, this Court hereby **DISMISSES** Defendant's Motion for Summary Judgment, and **HOLDS** that once Law 52 funds are renewed, individuals who had been continuously employed with previous Law 52 grants, and whose employment contracts were not renewed on account of their political affiliation, have a property interest to continued employment and have a due process interest in a pre-termination hearing.

**IT IS SO ORDERED.**