Juan **ROVIRA RIVERA,**
et al., Plaintiff

v.

**PUERTO RICO ELECTRIC POWER
AUTHORITY, et al., Defendants**

No. CIV. 03–1519JP.

United States District Court,
D. Puerto Rico.

April 5, 2005.

---

John Nevares, Esq., John F. Nevares & Assoc. PSC, San Juan, for Plaintiff.

Fracisco J. Ortiz–García, Esq., Puerto Rico Electric Power Authority, María Judith Surillo, Esq., Department of Justice, Commonwealth of Puerto Rico, San Juan, for Defendant.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

Before the Court is Defendant Puerto Rico Electric Power Authority, Héctor Rosario, Wilfredo Pantojas and Abraham Rodríguez–Guisao's Motion for Summary Judgment (**docket No. 93**) and Plaintiff Juan Rovira Rivera and María Zayas Martínez' opposition thereto (docket No. 100).

Plaintiff Rovira brings this claim under 42 U.S.C. § 1983, pursuant to the First Amendment of the United States Constitution, alleging that Defendants discriminated against him based on his political affiliation when, as a result of the change in administration in 2000, Defendant Pantojas Reyes initiated a pattern of conduct of closely supervising Plaintiff Rovira. As part thereof, Plaintiff alleges Defendants prohibited him from visiting the Ground Transportation offices and workshops around the Island, severely limiting Plaintiff's ability to properly supervise the offices and workshops he was directly responsible for overseeing, and depriving him of his duties and responsibilities as chief of the division when he was effectively "by-passed" and his duties were assigned to his subordinate, co-Defendant Rodríguez–Guisao. Plaintiff, a member of the New Progressive Party ("NPP"), has been a career employee of the Puerto Rico Electric Power Authority (hereinafter "PREPA"), working in several capacities for nearly twelve (12) years, and was appointed as interim head of the Ground Transportation Division in 1997, an appointment which became permanent in 2000.

Defendants now move for summary judgment on three grounds: 1) that Plaintiff's position was a trust position; 2) that Plaintiff has failed to establish a prima facie case of political discrimination or political harassment, and 3) that they are protected by the qualified immunity doctrine. According to Defendants, Plaintiff's position, while classified as a career position, carries with it all the duties and responsibilities of a trust position, and therefore, they argue, the position duties permitted Defendants to change Plaintiff's functions at will and validly on the basis of political affiliation.

The Court clarifies that Defendants raise summary judgment arguments only against the allegations of co-Plaintiff Juan Rovira Rivera, not against the allegations of co-Plaintiff María Zayas Martínez. As a matter of fact, Defendants in their motion specifically stated that they were requesting summary judgment only against Plaintiff Rovira, not against Plaintiff Zayas. Therefore, the Court shall only consider the arguments relating to co-Plaintiff Rovira in this Opinion. For the foregoing reasons, the Court hereby **DENIES** Defen-

dants' Motion for Summary Judgment on all grounds.

## II. FINDINGS OF FACT

At the outset, the Court must emphasize that its findings of fact only pertain to the limited question of the type of position which Plaintiff occupied. The initial question to be determined in this instance is whether Plaintiff occupied a trust position, which permitted his functions to be changed at the whim of the executive under which he served and which carried with it permissible political actions, or whether he occupied a career position, which did not allow for a change of functions or demotion absent just cause. Regarding Defendants' remaining claims of harassment, the Court finds that there are genuine issues of material fact which preclude it from deciding this case on the basis of summary judgment, and therefore, the Court will not delve into facts regarding the remaining issues.

After thoroughly evaluating the facts presented by the parties and the record as a whole, the Court makes the following findings of fact:

1. Plaintiff Rovira was named temporarily to the position of Head of the Ground Transportation Division on or about March 1997 and permanently in the year 2000.

2. This division provides to all the divisions of PREPA the services of conservation and repair of the ground transportation fleet, technical counseling in purchasing matters, replacement and operation of motor vehicles.

3. The division recommends and implements rules and guidelines regarding the operation of the transportation fleet and watches its implementation with the other divisions.

4. It also develops practices and procedures for the conservation and security of the ground transportation fleet.

5. It also prepares specifications, estimates and requisitions for the purchase of the vehicles; it studies, evaluates and recommends the adjudications of the bids.

6. As head of this Division, Plaintiff Rovira "Directs, coordinates, and supervises all activities related to the Authority's land transportation fleet."

7. The land transportation fleet consists of over 3,000 vehicles, including pick-ups, platform trucks, cargo vans, barren-making vehicles, etc.

8. The fleet has a total cost of over $129,000,000.00.

9. The Head of the Ground Transportation Division participates in bid evaluations for the purchase of motor vehicles, equipment, parts, and accessories.

10. He develops and approves specifications for the purchase of specialized automotive equipment that can improve the services offered by the Agency.

11. He coordinates land transportation services with the Agency's and government agency officials, and private citizens.

12. He provides advice to the Agency officers on matters related to the operation, organization, and maintenance of the land transportation fleet.

13. He prepares, in coordination with his or her subordinates, short and long-term plans that comply with the service, general operation, and expense budget requirements.

14. He also formulates and recommends the establishment of policies and procedures of general application at PREPA.

15. He prepares and submits to the Director of Administration reports regarding economic results and other important aspects of the operations.

16. Plaintiff directs and administers the System of Quality and Loss Control in the division and establishes guidelines and internal policies to make sure that this system is followed.

17. Plaintiff Rovira has not been dismissed as head of the Ground Transportation Division.

18. Plaintiff Rovira's main salary has not been reduced.

19. Plaintiff Rovira has not been transferred.

20. Plaintiff Rovira has not been discharged.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 246–47, 106 S.Ct. at 2514–15.

## IV. CONCLUSIONS OF LAW

### A. *Career v. Trust Position*

■ It has been established that trust employees do not have a cause of action for political discrimination or a property interest in employment. Defendants allege that political affiliation is a proper requirement for Plaintiff's position as head of the Ground Transportation Division be-

cause although it carries the title of a career position, it is considered a policy-making or trust position. According to Defendants, the position entails access to confidential information and involves formulating public policy. The current job description of the position includes, among other things: "Directs, coordinates, and supervises all activities related to the Authority's land transportation fleet; provides advice to the agency officers on matters related to the operation, organization, and maintenance of the land transportation fleet; prepares short-and long-term plans that comply with the service, general operation, and expense budget requirements, and formulates and recommends the establishment of policies and procedures of general application at PREPA."

In support of their position, Defendants cite to a two-part test in order to determine the type of position which Plaintiff occupied: first, whether the agency's functions involve decision-making on issues where there is room for political disagreement on goals or implementation; and second, whether the employee's duties resemble those of a policymaker who is privy to confidential information where political affiliation is an appropriate requirement. *Ortiz–Piñero v. Rivera–Arroyo*, 84 F.3d 7 (1st Cir.1996).

In support of the first prong, Defendants cite previous decisions that held that PREPA was engaged ... "in what might be termed a 'politically sensitive mission,'" *see Méndez–Palou v. Rohena–Betancourt*, 813 F.2d, 1255, 1260 (1st Cir.1987); *Rodríguez–Burgos v. Electric Energy Auth.*, 853 F.2d 31 (1st Cir.1988), and therefore, they seem to be categorizing across the board all functions and services of PREPA as involving decision-making on issues, because there is room for political disagreement on goals or their implementation. Regarding the second prong, Defendants allege that Plaintiff's position entails heavy

supervisory responsibilities, and that the position in question ... "is not a clerk position. Clerks do not act in an advisory position nor do they have extensive supervisory responsibilities".

■ As is well known, a public employee may not be fired solely because of his political affiliation. *Branti v. Finkel*, 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Rosenberg v. City of Everett*, 328 F.3d 12 (1st Cir.2003). Dismissal based on political patronage is permissible, however, if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Jiménez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 240 (1st Cir.1986) (*en banc*) (*quoting Branti*, 445 U.S. at 518, 100 S.Ct. 1287, 63 L.Ed.2d 574). Political discharge is permitted to give a new administration an opportunity to fulfill expectations by surrounding itself with "agency leaders and top subordinates responsive to the elected officials' goals". *Flynn v. City of Boston*, 140 F.3d 42, 46 (1st Cir.1998). Whether or not a position is subject to political discharge is a legal question for the Court. *Id.* at 44.

■ Regarding Defendants' first issue, the Court disagrees that simply because there is room for political disagreement on goals or the implementation of PREPA's goals, it automatically entails that all its employees formulate public policy. Simply because the agency itself may be involved in politically sensitive issues does not automatically make all of its employees trust employees. Defendants would be hard pressed to argue that a PREPA janitor or an office clerk occupies a trust position. Therefore, the issue of whether an agency is involved in decision making issues where there is room for political disagreement does not automati-

cally entail that the position in question will be a political or trust position.

■ Defendants' second allegation, that the position of head of Ground Transportation is a trust position, is not supported either by the job description or by the law. As previously discussed, according to the law, party affiliation is an appropriate requirement for a public position if (1) "the discharging agency's functions entail 'decisionmaking on issues where there is room for political disagreement on goals or their implementation,' " and (2) " 'the particular responsibilities of the plaintiff's position resemble those of a policymaker, privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement for continued tenure.' " *Rosenberg*, 328 F.3d at 18. As far as the Court can see, the job description of "Head of Land Transportation Division" does not indicate any policymaking or access to confidential information. Indeed, the documentary evidence supplied by Defendants does not show that the position has ever been a policymaking position.

Furthermore, Plaintiff reports to the Director of Administrative Services, not to the head of the agency. He does not participate in any policy meetings with the rest of the agency heads. Simply because he oversees a division, that by its nature of being comprised of heavy vehicles and machinery is worth several million dollars (according to Defendants, over $129,000,000.00), does not automatically mean that Plaintiff is a policy-making individual. Further, the Court cannot see that Plaintiff has the authority to speak on behalf of policymakers, that he has contact with elected officials, that he has access to confidential materials and information, or that the position, as far as the Court can see from the documents presented, is responsive in any way to partisan politics and political leaders. *See* the requirements set forth under *Ortiz–Piñero*, 84 F.3d at 16.

The Court cannot find that an employee who coordinates land transportation services, bids on motor vehicles, approves specifications for the purchase of special automotive equipment and maintains the land transportation fleet is a policymaker. If anything, Plaintiff in certain limited instances, merely carries out the policy as instructed by his superiors, for instance, when he prepares the long and short term plans that comply with the service operation and budget requirements already established and in place. Accordingly, the Court finds that Plaintiff's position was a career position. *cf., Duriex–Gauthier v. López–Nieves*, 274 F.3d 4, 10 (1st Cir.2001) (political dismissal upheld where employee was "responsible for the planning and supervision of all the personnel activities," analyzing organizational problems and acting as a liaison with a higher office); *Jiménez Fuentes*, 807 F.2d at 243–46 (finding position to be one of policymaking where employee "proposes, establishes, and implements public policy, is privy to confidential information, and acts as a spokesperson for the agency"); *see also Flynn*, 140 F.3d at 45 (noting that dismissal on political ground has been upheld in this circuit "where the plaintiff merely represented the agency's policy positions to other entities or to the public"). The Court cannot find that Plaintiff's position in this instance encompassed any of the aforementioned duties. Lastly, PREPA's own internal classification considers the position as a career position, and has always considered it as such. The Court therefore **HOLDS** that Plaintiff's position as head of the Land Transportation Division is properly considered to be a career position.

Because Plaintiff's position was a career position, Defendants had no right to un-

dertake any actions on the basis of political affiliation. In other words, the position did not permit Defendants to effect any changes in Plaintiff's functions validly at their will on the basis of political affiliation. Therefore, the Court **DENIES** Defendants' motion for summary judgment on this issue.

## B. Prima facie case

▮ Defendants next argue that Plaintiffs have failed to make out a prima facie case of political discrimination or political harassment. The Court finds however, that the factual circumstances and motivation surrounding Defendants' decisions to assign Plaintiff to these particular duties and working conditions are in dispute; questions of fact remain as to whether these working conditions and duties were a "demotion" or effected a stripping of his functions, whether Plaintiff was harassed, whether Defendants' decision to reassign some of his duties, to "re-route" some of his duties through Plaintiff's subordinates, and the ensuing working conditions, were all motivated by discriminatory animus. *See Roldán–Plumey*, 115 F.3d at 65; *see also Gómez–Candelaria v. Rivera–Rodríguez*, 218 F.Supp.2d 66, 75 (D.Puerto Rico 2002) (Pieras, J.) (*rev'd on other grounds* ). As is well known by now, the key component of a political discrimination defense for any type of employee is a *lack of discriminatory animus by the Defendants,* which is a question of fact proper only for a jury to decide. Therefore, the Court DENIES Defendants' Motion for Summary Judgment on prima facie case grounds.

## C. Qualified Immunity

Defendants' last argument is that their conduct is protected by the doctrine of qualified immunity because it was reasonable and did not violate clearly established law. Defendants state that the position in question ... "was not a position where it was clearly established that an employee, in light of the responsibilities inherent in the position, was constitutionally protected from patronage dismissal". Defendants' *Motion for Summary Judgment* at 17. Plaintiff alleges that all Defendants' actions were politically motivated.

The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 65 (1st Cir. 1997). The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth,* 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García v. Vera–Monroig,* 204 F.3d 1, 10 (1st Cir.2000) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Drawing on Supreme Court precedent, the Court employs a three-part test when presented with a motion for summary judgment based on qualified immunity in order to determine if a public official is entitled to the same. 1) The first inquiry must be whether a constitutional right would have been violated on the facts alleged; 2) the determination of whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and 3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d

272 (2001); *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999); *St. Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068, L.Ed.2d 1068 (1996); *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991).

In other words, the first step is taken analyzing the claim in the light most favorable to the party asserting the injury, and the Court asks, do the facts alleged show the officer's conduct could have violated a constitutional right? *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156 (2001). At this stage, and evaluating the facts in the light most favorable to the non-moving party, Plaintiffs, the Court finds that, *based on the facts alleged*, a constitutional right could have been violated. The Court makes clear, however, that it is not ruling either way on the merits of Plaintiffs' constitutional claim. Rather, it is simply saying that at the summary judgment stage, and viewing the evidence presented in the light most favorable to Plaintiffs, they have met their burden of establishing a possible constitutional violation.

It has been clearly established, however, that when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella". *Id.* The Court finds that in the case at bar, Plaintiff has alleged facts that, if true, could make out a constitutional rights claim of political discrimination. Specifically, there is a question of fact as to whether Plaintiff was harassed while performing his duties, whether he was stripped of some of his functions, and whether he was "by-passed" in favor of his subordinates, based on his political affiliation.

If the employment actions taken were motivated by political animus, the Defendants knew or should have known that such action was clearly unconstitutional. While the general prohibition against political discrimination was clearly established when Defendants acted [1], the factual circumstances and motivations surrounding the Defendants' treatment of Plaintiff are in dispute. *See Roldán–Plumey*, 115 F.3d at 65–66; *see also Gómez–Candelaria*, 218 F.Supp.2d at 76.

Working against Defendants' qualified immunity argument that the law was "unclear" as to the position's classification is the fact that PREPA's own internal classification considers the position as a career position, and has always considered it as such. Furthermore, Plaintiff's father-in-law and wife's uncle were highly visible NPP figures as Mayor of Fajardo and a House of Representatives candidate, respectively. Therefore, due to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendants' decision to assign or reassign the particular duties and working conditions which Plaintiff had at the PREPA, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendants' motion for qualified immunity at this time. *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir.2002); *Acevedo–García v. Vera–Monroig*, 30 F. Supp.2d 141, 148 (D.Puerto Rico 1998) (Pieras, J.); *Gómez–Candelaria*, 218 F.Supp.2d at 76. Accordingly, Defendants' motion for qualified immunity is hereby DENIED at this stage of the litigation.

---

**1.** *See e.g. Branti*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 and *Elrod*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547.

## V. CONCLUSION

For the aforementioned reasons, the Court **DENIES** the Motion for Summary Judgment on all grounds advanced by Defendants.

**IT IS SO ORDERED.**