Pedro ORRACA FIGUEROA, Plaintiff

v.

Anibal Jose TORRES TORRES, et al., Defendants

No. CIV. 02–2225(JP).

United States District Court, D. Puerto Rico.

Oct. 14, 2003.

John F. Nevares, San Juan, PR, for Plaintiff.

Mariana Negrón Vargas, Commonwealth Department of Justice, Federal Litigation Division, San Juan, PR, Eileen Landrón Guardiola, Landrón & Vera, Centro Internacional de Mercadeo, Guaynabo, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. INTRODUCTION

Plaintiff Pedro Orraca Figueroa brings this case against Defendants under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff began working in a transitory position, "Employment Program Specialist", for the Youth Affairs Office of the Commonwealth of Puerto Rico (referred to herein by its Spanish acronym, "OAJ") in December 1999. He was promoted to the career position of "Juvenile Coordinator" on August 30, 2000, after a competitive selection process. Plaintiff is affiliated with the New Progressive Party ("NPP"). Defendants in this case are Aníbal Torres Torres, in his official capacity as OAJ Executive Director, and in his personal capacity,

and José Otero, Special Aide to the Executive Director, in his personal capacity.

In November 2000, the Popular Democratic Party won the general elections in Puerto Rico ("PDP"). Defendants are affiliated with the PDP. On July 6, 2001, after the change in administration, Co–Defendant Aníbal Torres Torres notified Plaintiff that he was going to annul his appointment as Youth Coordinator because the appointment was not properly carried out, which was discovered by Co–Defendant after an audit of employee personnel files. After an administrative hearing, the hearing officer determined that Plaintiff's appointment was illegal. According to the hearing officer, Plaintiff lacked the necessary experience for the position. On August 24, 2001, Plaintiff was dismissed from his position.

Plaintiff states that Defendants then opened competition for two positions titled "Youth Coordinator", which was Plaintiff's previous position. On September 7, 2001, Plaintiff applied for the position. On October 8, 2001, the Youth Affairs Office notified Plaintiff that he had been certified as an eligible candidate for the position. However, Defendant Torres Torres filled both open positions with members of the PDP.

Plaintiff states that, after the change in administration, his duties were systematically removed by Defendants, to the point where he was deprived of all of the duties and responsibilities set forth in his job description, despite Plaintiff's request for work assignments. Plaintiff was left isolated in a hall with no office equipment, no personal telephone, and no access to the files or documents he needed to perform his duties. He was told not to talk or leave his work area.

Defendants now move for summary judgment, alleging that Plaintiff has failed to state a case for political discrimination because he did not have the required interview experience for the position of "Youth Coordinator" and was appointed illegally in violation of the Personnel Law of Puerto Rico. Second, Defendants state that Plaintiff has failed to state a claim for a violation of his Due Process rights under the Fourteenth Amendment because, as his appointment was illegal, he did not possess a property interest in his employment. Finally, Defendants allege that they are immune from suit under the doctrine of qualified immunity (docket No. 31).

Plaintiff opposes Defendants' motion (docket No. 38), stating that Defendants' decision to investigate and terminate Plaintiff was motivated by discriminatory animus.

## II. UNCONTESTED FACTS

The following are the uncontested facts, agreed to by the parties, as they appear in the ISC Order in this case:

1. In September 1999, Plaintiff applied for a position at the Youth Affairs Office ("OAJ").

2. The parties stipulate as true the contents of Plaintiff's employment application with the OAJ, dated October 1, 1999.

3. The parties stipulate as true the contents of Plaintiff's resume, submitted as part of his employment application in 1999.

4. The parties stipulate as true the contents of a document titled "Plan de Acción a Realizarse en la Comisión de Comercio e Industria" dated February 16, 1999.

5. Plaintiff was appointed to the position of "Employment Program Specialist" at OAJ, as a transitory employee, from October 1, 1999 to June 30, 2000, with a salary of $1,139.00 per month.

6. By December 20, 1999, Plaintiff was working in the Covenant with the Youth Program, with a salary of $1,239.00 per month.

7. An opening for three positions as "Employment Program Specialist," named and numbered "Convocatoria: 2000–10" dated January 3, 2000, was issued by OAJ. Participants had until January 21, 2000, to apply for the position openings.

8. Plaintiff applied for one of the positions of "Employment Program Specialist" for OAJ on January 11, 2000, for which he submitted an employment application.

9. Plaintiff's personnel file contains a Certification dated January 13, 2000, issued by Antonio Silva Delgado, Representative for the Eighth District of the House of Representatives, and President of the Commerce and Industries Commission.

10. On April 6, 2000, Mrs. Gladys G. Meléndez, Human Resources Director at OAJ, wrote Plaintiff a letter stating that his exam for Opening 2000–10 had been evaluated and his name included in the List of Eligibles. Also, Mrs. Meléndez requested his attendance at an interview on April 13, 2000, at OAJ.

11. OAJ's List of Eligibles for Opening 2000–10 reflects that, from ten applicants, four had Bachelor's Degrees and that they were included as eligible. The name and score given to these four applicants is as follows: Ivette M. Montañez: 75%; María L. Vázquez Guzmán: 72%; Pedro Orraca Figueroa: 71%; Dalisa Marrero Ríos: 70%.

12. By letter dated June 2, 2000, Arturo Deliz Vélez, OAJ's Executive Director, informed Plaintiff that he had been appointed to an Employment Program Specialist Position, as a regular career employee, effective June 16, 2000.

13. Through letter dated June 7, 2000, Mrs. Gladys G. Meléndez, Director of Human Resources at OAJ, informed Plaintiff that he had been selected for the Employment Program Specialist Position for Opening 2000–10, effective June 16, 2000. She also requested that he meet with her on June 12, 2000, to coordinate matters related to his employment.

14. Two documents titled "Notification for Appointment and Change Report" were issued on behalf of Plaintiff on June 2, 2000, to wit: (1) ending his transitory appointment as Employment Program Specialist, in the Services Sub Area, under the Covenant with Youth Program, effective June 15, 2000, (2) appointing him as Employment Program Specialist, in the Assistant Services Area, under the Covenant with the Youth Program. This second change reflects that, in his recently appointed position, Plaintiff's status was changed from career-probatory to regular-career, effective June 16, 2000, with a salary of $1,244.00 per month.

15. A "Notification for Appointment and Change Report" was issued on behalf of Plaintiff on August 30, 2000, stating that, as a result of the introduction of OAJ's new Classification Plan for the career service, Plaintiff's position was now one of "Youth Coordinator" in the Assistant Service Area, under the Covenant with the Youth Program, a regular position, with a salary of $1,437.00 per month, effective August 15, 2000.

16. Plaintiff's position as Youth Coordinator is not one in which political affiliation is an appropriate requirement

nor does it have anything whatsoever to do with the effective performance of his position.

17. In January of 2001, Governor Sila M. Calderón appointed Co–Defendant Aníbal J. Torres Torres as Executive Director of the Youth Affairs Office.

18. Co–Defendant Torres Torres is a political activist of the Popular Democratic Party ("PDP"), who ran for mayor of the Municipality of Orocovis but was defeated by the candidate for the New Progressive Party ("NPP").

19. On August 20, 2001, an Administrative Hearing was held regarding the annulment of Plaintiff's position before Iris Gautier Rodríguez.

20. On September 5, 2001, the Youth Affairs Office published a Job Opening Announcement ("Convocatoria") to fill two positions titled "Youth Coordinator", including the position previously occupied by Plaintiff.

21. On September 7, 2001, Plaintiff applied for the position of "Youth Coordinator".

22. On October 8, 2001, the Youth Affairs Office notified Plaintiff that he had been certified as an eligible candidate for the position of "Youth Coordinator".

23. Co–Defendant Torres Torres filled both available positions for Youth Coordinator with two persons identified with and/or members of the PDP.

## III. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

 Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir. 1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; see also Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present

definite, competent evidence to rebut the motion. *See Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–1.

## IV. FIRST AMENDMENT CLAIM

Defendants now move for summary judgment on Plaintiff's claim for political discrimination in violation of his First Amendment rights pursuant to 42 U.S.C. § 1983. According to Defendants, Plaintiff was not qualified for the career position of "Youth Affairs Coordinator," to which he was appointed by the previous administration. Therefore, Defendants state that Plaintiff has failed to show that political discrimination was a substantial or motivating factor in their decision to terminate Plaintiff.

The parties have agreed, in their joint statement of uncontested facts, to the following description of the application process Plaintiff followed. In September 1999, Plaintiff applied for a position at the Youth Affairs Office ("OAJ"). Plaintiff was appointed to the position of "Employment Program Specialist" at OAJ, as a transitory employee, from October 1, 1999 to June 30, 2000. An opening for three positions as "Employment Program Specialist," named and numbered, dated January 3, 2000, was issued by OAJ. Participants had until January 21, 2000 to apply for the position openings. Plaintiff applied for one of the positions of "Employment Program Specialist" for OAJ on January 11, 2000, for which he submitted an employment application. On April 6, 2000, Mrs. Gladys G. Meléndez, Human Resources Director at OAJ, wrote Plaintiff a letter stating that his exam for Opening 2000–10 had been evaluated and his name included in the List of Eligibles ("lista de elegibles"). Also, Mrs. Meléndez requested his attendance at an interview on April 13, 2000, at OAJ.

OAJ's List of Eligibles for Opening 2000–10 reflects that, from ten applicants for the position, four had Bachelor's Degrees and that they were included as eligible. The name and score given to these four applicants is as follows: Ivette M. Montañez: 75%; María L. Vázquez Guzmán: 72%; Pedro Orraca Figueroa: 71%; Dalisa Marrero Ríos: 70%.

By letter dated June 2, 2000, Arturo Deliz Vélez, OAJ's Executive Director, informed Plaintiff that he had been appointed to an Employment Program Specialist Position, as a regular career employee, effective June 16, 2000.

A "Notification for Appointment and Change Report" was issued on behalf of Plaintiff on August 30, 2000, stating that, as a result of the introduction of OAJ's new Classification Plan for the career service, Plaintiff's position was now one of "Youth Coordinator" in the Assistant Service Area, under the Covenant with the Youth Program, instead of "Employment Program Specialist."

On August 20, 2001, after the change in administration, an Administrative Hearing was held regarding the annulment of Plaintiff's position before Iris Gautier Rodríguez. Plaintiff was terminated August 24, 2001.

On September 5, 2001, the Youth Affairs Office published a Job Opening Announcement ("Convocatoria") to fill two positions titled "Youth Coordinator", including the position previously occupied by Plaintiff. On September 7, 2001, Plaintiff applied for the position of "Youth Coordinator". On October 8, 2001, the Youth Affairs Office notified Plaintiff that he had been certified as an eligible candidate for the position of "Youth Coordinator". Co–Defendant Torres Torres filled both available positions for Youth Coordinator with two persons identified with and/or members of the PDP.

Defendant moves for summary judgment, stating that Plaintiff has failed to state a claim for political discrimination because the evidence shows that he was terminated because his original appointment was illegal.

According to Defendants, at the time that Plaintiff was included in the List of Eligibles for the position he competed for, he did not have documents in his personnel file indicating he had the required interview experience for the position. The position he was applying for required one year of experience as an employment officer or interviewer. Despite this lack of documented required experience, the employees of the past administration at OAJ included him on the List of Eligibles for the career position. In addition, Defendants allege that Plaintiff had not spent the requisite amount of time as a transitory employee prior to his appointment as a career employee. Therefore, the position he occupied was null and void because he was appointed to it in violation of the law. A hearing officer confirmed Defendants' decision in a report dated August 21, 2001. According to Defendants, the decision to terminate Plaintiff was made based on the law and not in any way on his political affiliation.

Plaintiff offers the following evidence to show that Defendants' decision was motivated by political animus. On January 30, 2001, Defendant Torres–Torres stated during a radio interview, "let me clean the house, once I clean and remove all those documents of election officials of the NPP that we found in one of the offices I am going to serve the people." Later in another radio interview, Defendant Torres–Torres stated that, out of 118 people employed at the OAJ, he understood that 110 were affiliated with the NPP and that he was performing an audit to nullify the appointments made by the previous administration of personnel who held trust positions.

On February 20, 2001, Plaintiff states that Defendants informed him that they were going to perform an audit of his personnel file. On March 2, 2001, Plaintiff states that Defendant José Otero stripped him of the duties and responsibilities of his position when Plaintiff requested the assistance of the NPP administration of the Municipality of San Juan for an activity the OAJ refused to support. Plaintiff states that Defendant Torres told him he needed to understand that there had been a change in administration and that he must obey the new administration. From the end of June 2001, to August 2001, the date Plaintiff was dismissed, Plaintiff states that he was not assigned any work.

On June 26, 2001, Plaintiff participated in an activity in the "Lomita de los Vientos," an event where NPP affiliates raise the American flag. The event was widely reported and Plaintiff's photo was published in one newspaper. Plaintiff states that he was a political leader among OAJ employees. On July 6, 2001, Defendant Torres–Torres notified Plaintiff that an audit revealed that he did not have the necessary work experience to qualify for the position and that the List of Eligibles had been illegally issued. Plaintiff was dismissed on August 24, 2001. The parties agree that, on September 5, 2001, Defendant announced two openings for the position Plaintiff had occupied. The parties agree that Plaintiff applied, was certified as an eligible candidate, but was not selected. The parties also agree that the two positions were filled with PDP affiliates. Plaintiff states that this sequence of events clearly indicates that Defendants' employment actions were motivated by political discrimination.

On May 8, 2001, twelve former employees of the OAJ filed a complaint with the

Puerto Rico Personnel Administration Systems Appeal Board ("JASAP" by its Spanish acronym). They alleged that they had been terminated due to political discrimination. The petitioners had been informed by the OAJ on March 1, 2001 that their appointments as career employees would be annulled based on an audit of their files and doubts as to whether their appointments were legal. JASAP ordered the reinstatement of the employees to their career positions, finding that the annulment of their appointments and their subsequent termination was motivated by political discrimination. Plaintiff was not a petitioner in the case.

■ On a motion for summary judgment, a plaintiff bears the initial burden of showing that political discrimination was a substantial or motivating factor in a defendant's employment decision. To establish a prima facie case of political discrimination, plaintiffs must produce sufficient evidence to allow a rational jury to find that their political affiliation was a substantial or motivating factor behind the adverse employment decisions. *See Báez–Cruz v. Municipality of Comerío,* 140 F.3d 24, 28 (1st Cir.1998).

■ However, it has been clearly established that plaintiffs need not produce direct evidence of a politically-based discriminatory animus. *Acosta–Orozco v. Rodríguez–De–Rivera,* 132 F.3d 97, 101–102 (1st Cir.1997). Instead, in order to demonstrate that political discrimination was a substantial or motivating factor behind a plaintiff's dismissal, the First Circuit has held that circumstantial evidence alone can support a finding of political discrimination. *See Acosta–Orozco,* 132 F.3d at 101–102; *Anthony v. Sundlun,* 952 F.2d 603, 605 (1st Cir.1991); *Estrada–Izquierdo v. Aponte–Roque,* 850 F.2d 10, 14–15 (1st Cir.1988). The operative question in this kind of scenario is "does the circumstantial

evidence, taken as a whole, give rise to a plausible inference of discriminatory animus which, ultimately possesses enough convictive force to persuade a rational fact-finder that the defendants' conduct was politically motivated?" *Anthony,* 952 F.2d at 606.

■ Factors that have been found to show discriminatory animus include the fact that the plaintiff was a known member of the opposing political party, that the position was then filled by a member of the opposing political party, and that everyone of the plaintiff's party was demoted after a change in office. *See Rodríguez–Pinto,* 982 F.2d at 40; *Rivera–Ruiz v. González–Rivera,* 983 F.2d 332, 335 (1st Cir.1993); *Acevedo–García v. Vera Monroig,* 30 F.Supp.2d 141 (D.Puerto Rico 1998) (Pieras, J.) *aff'd,* 204 F.3d 1 (1st Cir.2000).

■ The Court finds that Plaintiff has provided evidence sufficient to sustain her initial burden on summary judgment. It is undisputed that Plaintiff is a member of the NPP while the new administration was run by the PDP. The Court understands that this in and of itself is insufficient to survive this Court's summary judgment inquiry. However, the Plaintiff has offered compelling evidence of possible political discrimination that raises material issues of disputed fact as to the Defendants' actual motivation in deciding to investigate Plaintiff's appointment and terminate him from his position. First, JASAP determined that Co–Defendant Torres–Torres had illegally terminated twelve employees of the OAJ based on their political affiliation. Like Plaintiff, these employees were notified that their appointments had been annulled after an investigation. This evidence raises a substantial issue of fact as to Defendants' motivation in firing Plaintiff. While Plaintiff was not a petitioner in

the administrative proceeding, the results of the proceeding indicate that politically-discriminatory terminations did occur in the office where Plaintiff worked and that an atmosphere of political animus towards members of his political party did exist. In addition, the parties agree that, after Plaintiff was terminated, he applied for the position he previously occupied, was certified as qualified for the position, yet was not selected and the available positions for the job title were filled with members of the PDP. The Court finds this evidence substantially strengthens Plaintiff's case for political discrimination.

In combination with the above evidence, the Court finds the sequence of events surrounding Plaintiff's participation in the "Lomita de los Vientos" activity and his subsequent termination compelling evidence that his termination was motivated by his political affiliation. In addition, the Plaintiff states that Co-Defendant made statements during radio interviews that raise an issue of material fact as to his motivation in terminating Plaintiff. While the statements made on the radio do not conclusively indicate an intent on the part of Co-Defendant Torres–Torres to terminate employees based on their political affiliation, they do provide compelling evidence that Co-Defendant Torres–Torres actions may have been motivated by political animus.

Finally, Plaintiff additionally states that, prior to his termination, he was stripped of the duties of his job position and relocated to a hallway. The Court finds this evidence compelling because, if Plaintiff's appointment was illegal, this illegality would explain Plaintiff's termination, yet it would not explain adverse employment treatment of Plaintiff prior to his termination. Combined with the above evidence, this evidence raises an issue of material fact as to Defendants' motivation in terminating Plaintiff and allegedly stripping him of the duties of his job description.

The Court finds that the factual circumstances and *motivation* surrounding Defendants' decision to annul Plaintiff's appointment and terminate him are actually in dispute. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir.1997); *see also Gómez–Candelaria v. Rivera–Rodríguez*, 218 F.Supp.2d 66, 75 (D.Puerto Rico 2002) (Pieras, J.). The key component of a political discrimination defense for any type of employee, whether he be career, regular, irregular or transitory, is a *lack of discriminatory animus by the Defendants*, which is a question of fact proper only for a jury to decide.

While the burden still rests upon Plaintiffs to prove their case to the ultimate fact finder, in this case the jury, the Court finds there to be sufficient questions of fact to inhibit the Court from granting Defendants' motion for summary judgment. For these reasons, Defendants' motion for summary judgment on the grounds that Plaintiff has failed to state a claim for political discrimination is hereby DENIED.

## V. FOURTEENTH AMENDMENT CLAIM

■ Defendants have also moved to dismiss Plaintiff's complaint under the Fourteenth Amendment. However, Defendants' arguments for dismissal of this claim rest on the alleged illegality of his appointment. If Plaintiff's appointment was illegal, Plaintiff would lack the necessary property interest in his employment to sustain a cause of action for deprivation of property under the Fourteenth Amendment. The Court does not reach this claim at this time, however, since it has found, as discussed at length above, that disputes of fact exist as to Defendants' motivation in investigating and terminating

Plaintiff and as to the alleged illegality of Plaintiff's appointment. Therefore, the Court DENIES Defendants' motion for summary judgment as to Plaintiff's claims under the Fourteenth Amendment at this time due to disputes of material fact.

## VI. QUALIFIED IMMUNITY

 Defendants have moved for summary judgment, alleging that they are immune from suit under the doctrine of qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez*, 115 F.3d 58, 65 (1st Cir.1997). The general rule regarding qualified immunity is that government officials are immune from suit and liability when their conduct does not violate clearly established statutory authority or constitutional rights, which a reasonable person should have known of at the time of the conduct at issue. *Mitchell v. Forsyth*, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Acevedo–García v. Vera–Monroig*, 204 F.3d 1, 10 (1st Cir.2000) (the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

Defendants contend that even if it is found that they violated Plaintiff's rights by terminating him, they are entitled to qualified immunity because they did not believe that they were violating Plaintiff's rights by terminating him. Defendants state that Plaintiff had no right to his position because his appointment was illegal. They state that they had no way of knowing that the termination of an alleg-

edly illegal career appointee was unconstitutional.

 When assessing a claim of qualified immunity, the Court employs a three part test. *See Savard v. Rhode Island*, 338 F.3d 23, 27 (1st Cir.2003), *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1694, 143 L.Ed.2d 818 (1999). The threshold question is whether the Plaintiffs have established a constitutional violation. *See Savard*, 338 F.3d at 27,; *St. Hilaire v. Laconia*, 71 F.3d 20 (1st Cir.1995), *cert. denied* 518 U.S. 1017, 116 S.Ct. 2548, 135 L.Ed.2d 1068 (1996). The second question asks whether the law was clearly established at the time of the violation. *See Savard*, 338 F.3d at 27. The final question is whether a reasonable official, situated similarly to the defendants(s), would have understood that the conduct at issue contravened the clearly established law. *See Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

 It has been clearly established that when there is a material dispute of fact, summary judgment cannot be ordered. *Swain v. Spinney*, 117 F.3d 1, 10 (1st Cir.1997). "Only after the facts have been settled can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella". *Id.* The Court finds that in the case at bar, Plaintiffs have alleged facts that, if true, make out a constitutional rights claim of political discrimination. If the employment actions taken were motivated by political animus, the Defendants knew or should have known that such action was clearly unconstitutional. While the general prohibition against political discrimination was clearly established when Defendants acted[1], the factual circumstances and motivations sur-

---

1. *See Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

rounding the Defendants' personnel decisions are in dispute. *See Roldán–Plumey* 115 F.3d at 65–66; *see also Gómez–Candelaria*, 218 F.Supp.2d at 76. Therefore, due to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendants' personnel decisions, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendants' motion for qualified immunity at this time. *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir.2002); *Acevedo–Garcia*, 30 F.Supp.2d at 148; *Gómez–Candelaria*, 218 F.Supp.2d at 76.

Even if this Court were to "objectively" consider the fact that Plaintiff's career appointment was allegedly illegal, Plaintiff has provided evidence which could lead a trier of fact to conclude that Defendants terminated Plaintiff because of discriminatory animus, which, under the law, is impermissible. This evidence weighs heavily on the Court's assessment against qualified immunity. *See Gómez–Candelaria*, 218 F.Supp.2d at 76. Likewise, as it relates to motive, it must be evaluated by a trier of fact. Accordingly, Defendants' motion for qualified immunity is hereby **DENIED** at this stage of the litigation.

## VII. CONCLUSION

The Court **DENIES** Co–Defendants' motion for summary judgment based on Plaintiff's claims under the First Amendment and the Due Process Clause of the United States Constitution pursuant to 42 U.S.C. § 1983. In addition, the Court DENIES Co–Defendants' motion for summary judgment on the grounds of qualified immunity (docket No. 31).

**IT IS SO ORDERED.**