Teresa TORRES–MARTINEZ,
et al., Plaintiffs

v.

PUERTO RICO DEPARTMENT
OF CORRECTIONS, et al.,
Defendants

No. CIV. 04–2148(JP).

United States District Court,
D. Puerto Rico.

April 3, 2006.

Emilio E. Solé-de la Paz, San Juan, PR, Rafael G. Martínez–Géigel, San Juan, PR, for Plaintiffs.

Kristine Burgos–Santiago, María Judith Surillo, Ana M. Margarida–Julia, Department of Justice, Office of the Solicitor General, San Juan, PR, for Defendants.

### OPINION AND ORDER

PIERAS, Senior District Judge.

## I.  INTRODUCTION

The Court has before it the Defendants' "Motion for Summary Judgment" (docket No. 51) and its accompanying supplementary motions, as well as the Plaintiffs' opposition thereto (docket No. 60). Plaintiff Teresa Torres Martinez alleges that the Defendants discriminated against her due to political animus by stripping her of her

duties; her husband, co-Plaintiff Ismael Morales, sues under Puerto Rico law to recover for his mental anguish. For the following reasons, the Court hereby **GRANTS** Defendants' "Motion for Summary Judgment" (docket No. 51).

## II. *LEGAL STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In discharging this burden, the non-moving party may not rest upon mere allegations or denials of the pleadings. *See* Fed. R.Civ.P. 56(e). On issues where the non-moving party bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202 (1986). Indeed, summary judgment may be appropriate "... where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994).

## III. *MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE*

After thoroughly evaluating the parties' stipulations in the record and their statement of proposed uncontested facts and supporting evidence, the Court determines that the following material facts are not in genuine issue or dispute:

1. Plaintiff Teresa Torres ("Torres") started working for the Department of Corrections in January of 1987.

2. Torres started employment at the Department of Corrections as a Penal Records Technician, a transitory position.

3. Plaintiff Torres is an active member of the pro-statehood Partido Nuevo Progresista or New Progressive Party ("NPP").

4. In 1992, Torres was appointed Director of the Penal Records Division at the Ponce Correctional Complex, a trust position, and was employed as such until 1994.

5. In 1994, Plaintiff was appointed Head of the Personnel Division at the Ponce Correctional Complex, a trust position which she held until May 31, 2000, at a salary of $2,051.00 per month.

6. Her appointment as the Head of Personnel was part of the "pilot project" for the regionalization of the Department of Corrections in compliance with the Morales–Feliciano case.

7. The Department of Correction and Rehabilitation created and approved a "Classification and Retribution Plan" in the year 2000.

8. According to the Classification and Retribution Plan of year 2000, new classifications were created according to the duties performed by employees. On June 12, 2000, Torres's position was classified as Human Resources Supervisor.

9. As a result of the new classification plan effective June 1, 2000, Torres was classified as Human Resources Supervisor with a monthly salary of $2,051.00, a position in which she served until May 31, 2001.

10. After she was informed of the change in classification of her position as Human Resources Supervisor, she appealed the change.

11. The appeal was granted on November 13, 2000 and she was reclassified as Human Resources Coordinator, a career position, retroactive to June 1, 2000, with a salary in the amount of $2,256.00, effective back to June 1, 2000.

12. According to the Classification and Retribution Plan of year 2000, Torres's reclassification to Human Resources Coordinator was done during the administration of former Secretary Zoé Laboy ("Laboy"), under the NPP government.

13. At that time, Torres did not compete for Human Resources Coordinator position.

14. The change of position happened automatically by virtue of the Classification and Retribution Plan of 2000.

15. Pursuant to Article VII of the Personnel Rules and Regulations for the Department of Corrections, when an employee is named to a trust position, the employee has a right to reinstatement to either the position she used to hold in the career service or to a similar one.

16. Torres was not reinstated according to the Personnel Rules and Regu-lations. Instead of being reinstated to her former career position of Penal Records Technician V, with a salary of $1,445.00, she was "automatically reclassified" by virtue of the New Classification and Retribution Plan, to Human Resources Supervisor with a salary of $2,051.00.

17. A special change report was made reclassifying Torres from her former career position to another position in the career service, first as Human Resources Supervisor and then as Human Resources Coordinator.

18. The job description for the position of Human Resources Coordinator, which is a career position, is not a policy making position.

19. Human Resources Coordinators supervise and coordinate the services only of those employees ascribed to the Southern Region's Human Resources Office, not the employees of the entire region.

20. Torres admits being on the committees which conducted interviews and offering recommendations, even though this was not a duty exclusive to her position according to her job description or OP-16 form.

21. Co-defendant Jaime López ("López") was the Regional Director for the Southern Region from year 2000 to 2004.

22. López held a policy making trust position and was Torres's immediate supervisor.

23. Torres alleges that López deprived her of duties such as making requests for personnel needs; writing relocation or transfer letters; writing requests for merit steps; orienting new employees; and drafting evaluations and recommendations.

24. The functions that were allegedly stripped from Plaintiff by López are

neither included in her job description (OP–16) nor in the Administrative Order for the regionalization of the Department of Corrections, written on October 11, 2000, by former Corrections Administrator Laboy.

25. Plaintiff admits that Defendant López only requested documents such as evaluations, charts and transfer letters, and admits that requests for such documents is inherent to the Director's functions.

26. Pursuant to the description of his duties in his OP–16 form, all the documents and functions requested from Torres fall within the López's inherent power as Director to implement the public policy of the agency.

27. Co–Defendant Elvin Alicea ("Alicea") held the position Auxiliary Administrative Agent II position and was appointed Auxiliary Administrative Agent III in December 2003.

28. Torres admitted that she named Alicea in the Complaint because he spread "gossip," which she considers to be a form of political discrimination.

29. Alicea participated at a meeting held on April 1, 2004, where Torres was confronted with a comment she had allegedly made about co-Defendant Lourdes Arcé ("Arcé"), but which she denies making.

30. Plaintiff admitted at her deposition that she named Alicea in this lawsuit because of the comments he made at that meeting.

31. Sandra Rivera was present at the meeting held on April 1, 2004 and took notes of the outcome of said meeting.

32. Co–Defendant Arcé's duties included welcoming new employees and sending them to the Human Resources.

33. Arcé contends that any evaluations written by López were of personnel that he supervised.

34. All the duties that Arcé performed as a Special Aide for the Regional Director were performed following orders from him and in his representation.

35. On August 13, 2004, due to a reorganization of the Office of Human Resources of the Corrections Department, Torres received a $724.00 raise in her monthly salary, and the name of her position was changed from Human Resources Coordinator to Human Resources Specialist II.

36. Due to the reorganization of 2004, Torres was not demoted nor transferred, and no adverse action has been taken against her.

37. According to the OP–16 forms for both positions, her duties as a Human Resources Specialist II remained exactly the same as the duties of a Coordinator of Human Resources.

38. Co-defendant Miguel Pereira ("Pereira") is the Administrator of the Commonwealth of Puerto Rico Corrections Department.

39. Torres has never met Pereira.

40. Torres wrote Pereira a letter dated April 26, 2004.

41. Even though Torres included information about her political affiliation in the letter, Pereira testified at his deposition that he doesn't know her political affiliation.

42. Torres testified at her deposition that she doesn't know Pereira's political affiliation, but that she believes he is affiliated with the Popular Democratic Party ("PDP").

43. To this date, Torres is still employed by the Department of Corrections.

## IV. CONCLUSIONS OF LAW

### A. Political Discrimination

Defendants move for summary judgment on Plaintiff Torres's 42 U.S.C. Section 1983 claim for political discrimination in violation of her First Amendment and due process rights. Torres argues that she has been stripped of her duties on account of her political affiliation to the New Progressive Party ("NPP") by her superiors. The Defendants argue that no adverse employment action was taken against Torres, and that there is no evidence on the record which would raise a genuine issue as to whether political affiliation was a motivating factor for any adverse employment decisions.

■ To establish a *prima facie* case of political discrimination under the First Amendment, a plaintiff must show that he or she engaged in constitutionally protected conduct, and that the conduct was a substantial or motivating factor for an adverse employment decision. *See Padilla–García v. Guillermo Rodríguez*, 212 F.3d 69, 74 (1st Cir.2000). This requires more than merely "juxtaposing a protected characteristic-someone else's politics-with the fact that plaintiff was treated unfairly." *Id.*, quoting *Correa–Martínez v. Arrillaga–Beléndez*, 903 F.2d 49, 58 (1st Cir. 1990). Evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not sufficient to meet this burden. *Rodríguez–Ríos v. Cordero*, 138 F.3d 22, 24 (1st Cir. 1998). In order to prevail, a plaintiff must point to evidence in the record that would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. *See Rivera–Cotto v. Rivera*, 38 F.3d 611, 614 (1st Cir.1994).

■ It has been clearly established that plaintiffs need not produce direct evidence of a politically-based discriminatory animus. *Acosta–Orozco v. Rodríguez de Rivera*, 132 F.3d 97, 101–102 (1st Cir. 1997). Instead, in order to demonstrate that political discrimination was a substantial or motivating factor behind an adverse employment action taken against a plaintiff, the First Circuit has held that circumstantial evidence alone can support a finding of political discrimination. *See Acosta–Orozco*, 132 F.3d at 101–102; *Anthony v. Sundlun*, 952 F.2d 603, 605 (1st Cir.1991); *Estrada–Izquierdo v. Aponte–Rogue*, 850 F.2d 10, 14–15 (1st Cir.1988). The operative question in this kind of scenario is "does the circumstantial evidence, taken as a whole, give rise to a plausible inference of discriminatory animus which ultimately possesses enough convictive force to persuade a rational fact-finder that the defendants' conduct was politically motivated?" *Anthony*, 952 F.2d at 606. However, though the Court can make its ruling based on circumstantial evidence, the plaintiff is still required to show that a causal connection exists linking defendants' conduct, as manifested in the adverse employment decision, to plaintiff's politics. *LaRou v. Ridlon*, 98 F.3d 659 (1st Cir.1996). *See also Avilés–Martínez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992).

■ If the plaintiff has shown that his or her political affiliation was a substantial or motivating factor in the adverse employment decision, the defendant will not be held liable if it can persuade the factfinder that it would have taken the same course of action anyway, without regard to plaintiff's political affiliation. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Sánchez–López v. Fuentes–Pujols*, 375 F.3d 121, 124 (1st Cir. 2004). The Supreme Court has made clear that a defendant's *Mt. Healthy* defense serves to prevent an employee who

would have received an adverse employment decision based on legitimate reasons from being "in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy*, 429 U.S. at 285, 97 S.Ct. 568, 50 L.Ed.2d 471. If a plaintiff does not produce evidence sufficient to allow a reasonable inference that political discrimination was a substantial or motivating factor in the challenged employment action, the Court need not examine the defendant's *Mt. Healthy* defense. *Vázquez–Valentín v. Santiago–Díaz*, 385 F.3d 23, 30–31 (1st Cir.2004).

As the Defendants argue in the motion, Plaintiff Torres's case is flawed on two grounds. First, it fails to sufficiently establish that there was an adverse employment action taken against her, and second, even assuming that an adverse employment action took place, it fails to establish a causal connection linking the Defendants' conduct to the alleged adverse action.

■ Plaintiff Torres's claims turn on the assertion that she was stripped of her duties. Torres's duties are limned in her OP–16 form, which contains her job description. OP–16 forms are considered dispositive as to the issue of what a person's official duties are. *See Romero Feliciano v. Torres Gaztambide*, 836 F.2d 1, 3 (1st Cir.1987), *citing Méndez–Palou v. Rohena–Betancourt*, 813 F.2d 1255 (1st Cir.1987) ("Whenever possible, we will rely upon [the OP–16] because it contains precisely the information we need concerning the position's inherent powers[.]").

Torres held the non policy-making career position of Coordinator of Human Resources (the position was later renamed Human Resources Specialist II, and entailed the same duties as the Coordinator of Human Resources). According to Torres's OP–16 form, her official duties are as follows:

1. Supervises activities that are developed at the Human Resources of the Southern Region ("HR Office").

2. Drafts correspondence and various reports for the consideration of the Director of the HR Office.

3. Prepares required reports for the regional director.

4. Supervises work by employees ascribed to the region's HR Office and recommends personnel transactions for which he/she is responsible.

5. Advises employees on aspects of human resources administration[.]

6. Drafts letters, reports and memoranda to be signed by the regional director or the director of human resources.

7. Attends meetings, along with the regional director, concerning aspects related to human resource administration.

8. Prepares reports on human resource needs in the region.

9. Has external relations with public agencies in order to obtain information from the different areas of human resources[.]

10. Ensures that the regulations and procedures established at the HR office and Corrections Administration are complied with.

11. Submits reports to the regional director and the director of the HR office about the work performed.

12. Certifies loans for the Employee Association[.]

13. Certifies letters of employment and salary, as well as other correspondence.

14. Relations with the HR office at headquarters in order to request advice, resolve situations, and conduct special studies, etc.

15. Coordinates the training needs of employees in the region with the Training Section and follows up so that the Training Plan is carried out.

16. Holds meetings with the heads of payroll, leaves, appointments and changes, training, and classification and compensation to discuss aspects related to the operation of these departments.

17. Monitors the attendance of the region's employees and instructs that this monitoring be done outside of the region.

18. Deals with and advises employees and the general public on different aspects of human resource administration.

19. Responsible for the custody and proper use of the property and equipment ascribed to the area under his/her charge.

20. Ensures that the laws, regulations, and rules and procedures established regarding his/her work area are complied with.

Plaintiff Torres's OP–16 form, Docket No. 52–11. Torres alleges that Defendant Jaime López, her supervisor, deprived her of duties including the duty to make requests for personnel needs, to write relocation or transfer letters, to write requests for of merit steps, to give orientation to new employees, and to draft evaluations and recommendations. She presents, however, no evidence that these functions were taken from her, nor, as we shall see, that these functions were held exclusively by her. In examining this claim, it is illuminating to examine Defendant López's official duties according to the OP–16 form for the trust position of Regional Director. As the OP–16 states, the Regional Director:

1. Plans, directs, controls, and supervises activities that are carried out in a region within the Corrections Administration.

2. Organizes and administers the operations of institutions.

3. Offers technical and other support to privatized institutions in the region.

4. Advises the Administrator.

5. Ensures that the rules and procedures needed to implement the agency's policy in the administration of correctional institutions are established and complied with.

6. Ensures that the budget is administered properly at the institutions assigned to his/her region.

7. Supervises contracted services and the acquisition of material, services and equipment needed for the operation of the institutions within his/her region.

8. Submits reports on events and incidents that occur at the institutions.

9. Ensures that the orders and the stipulations of the *Morales Feliciano* case are complied with.

10. Supervises the directors of security.

11. Holds periodic meetings with employees under his/her supervision.

12. Advises guard superintendents and commanders of the correctional institutions.

13. Conducts inspection visits at the penal institutions and half-way homes.

14. Inspects the regions's security plans.

15. Supervises the existing security, administration, operations, and compliance areas in the region assigned to him/her.

Jaime López's OP–16 form, Docket No. 52–13. Even a cursory examination of Torres's duties in comparison to those of López reveals that her position is subordinate to his. López's responsibility is to

plan, direct, control, and supervise activities that are carried out in his region. In her deposition, Torres admitted that she has no hiring authority. Docket No. 52–1 at 67. She also admitted that the function of writing the request for merit steps is "a function belonging to the regional director". *Id.* at 73. The other duties she claims she was stripped of involve mainly drafting documents which were for his signature.

■ Moreover, it is important to note that when asked to specify which of her duties were taken from her, she cites to five activities. Even assuming that she was stripped of those duties, that still leaves fifteen official duties she for which she remained responsible. Though the Court must draw all reasonable inferences in favor of the non-moving party, Torres has not provided the Court with evidence, aside from her own assertions, that she was stripped of these duties. This is especially true given that the duties she specifies were duties which, given the broad description of her supervisor's duties, are clearly within the scope of his inherent duties; certainly no evidence has been presented that would indicate that López was obligated to utilize Torres for drafting letters and recommendations.

■ Torres has also failed to establish any sort of causal connection between these quibbles about her duties and the political animus that allegedly prompted them. In making her case for political discrimination, Torres merely juxtaposes the fact that she is a known and active member of the NPP with the fact that the Defendants were affiliated with the PDP, which is insufficient to establish a causal connection. *See Padilla–García,* 212 F.3d 69, 74. Evidence that a plaintiff is politically active and that a defendant is aware of plaintiff's opposing views is not sufficient to meet this burden. *Rodríguez–Ríos v. Cordero,* 138 F.3d 22, 24 (1st Cir.

1998). In order to prevail, a plaintiff must point to evidence in the record that would permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus. *See Rivera–Cotto v. Rivera,* 38 F.3d 611, 614 (1st Cir.1994). Plaintiff Torres has pointed to no such evidence, relying only on repeated assertions that she was discriminated against due to political animus. Plaintiff Torres has failed to meet her initial burden, since only argument, but no evidence, has been submitted at the summary judgment stage to show that her termination was motivated by political animus. Therefore, the Court hereby **GRANTS** the Defendants' motion to dismiss Plaintiff Torres's political discrimination claims and will enter judgment dismissing with prejudice the Plaintiff's claims of political discrimination.

### B. *Fifth Amendment Claims*

In their complaint, Plaintiff alleges that her Fifth Amendment rights were violated by Defendants. Defendants argue that these claims should be dismissed because the Fifth Amendment does not apply to the case at bar. The Court agrees and disposes of this matter quickly.

■ The Due Process Clause of the Fifth Amendment provides that: "No person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V. The Fifth Amendment applies to actions of the federal government, not those of private individuals. *See Gerena v. P.R. Legal Serv. Inc.,* 697 F.2d 447, 448 (1st Cir.1983), *citing Public Utilities Comm'n v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952).

Because neither the federal government nor any of its agents are named defendants in this action, the Court **GRANTS**

Defendants' Motion on this basis, and will enter judgment **DISMISSING WITH PREJUDICE** Plaintiffs' Fifth Amendment claims.

### C. *Due Process*

■ Because the Court has found that the Plaintiff's claims that her duties are being stripped from her are not supported by evidence, she could not have been deprived of a property interest even if she had such an interest in her job functions.

Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claims against Defendants under the Due Process Clause of the Fourteenth Amendment.

### D. *Supplemental Claims*

In addition to their federal claims, Plaintiffs alleged several claims under Puerto Rico law. However, because there is no independent basis for federal jurisdiction over the Plaintiffs' supplemental state law claims, and given the dismissal of the Plaintiffs' federal claims, the Court declines to retain supplemental jurisdiction over the Plaintiffs' claims under Puerto Rico law. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court will enter judgment dismissing Plaintiffs' supplemental claims under Puerto Rico Law **WITHOUT PREJUDICE**.

## II. *CONCLUSION*

For the aforementioned reasons, the Court hereby **GRANTS** Defendants' "Motion for Summary Judgment" (docket No. 51). The Court will enter judgment **DISMISSING** the political discrimination and due process claims **WITH PREJUDICE** and the claims under Puerto Rico law **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**